UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHASE CALDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:20CV198-PPS |
| | ) | |
| N. WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Chase Caldwell, representing himself without an attorney, has filed a complaint under 42 U.S.C. §1983 alleging constitutional violations by a Merrillville police officer identified as "N. Wright." The complaint arises out of an encounter between Caldwell and Wright on January 30, 2020, at the Regional Mental Health Center in Merrillville, where Caldwell alleges he went for an outpatient assessment after Porter County Superior Court Judge David Chidester ordered Caldwell to "seek treatment and take all medications." [DE 1 at 2.] Caldwell was driven to the Center by his father, but didn't want his father present while the assessment was conducted. [*Id*.] According to Caldwell, the intake examiner refused to perform the assessment without Caldwell's father present. [*Id*.] While his father attempted to work out this snag in the proceedings, Caldwell waited in his father's Jeep Wrangler. [*Id*.]

The complaint describes how matters deteriorated:

> While waiting for my father I was approached by several Merrillville police officers.  I began to speak to [O]fficer Kloc (#396), Officer N. Wright (#408) and Cpl Henry about why I was at Regional Mental Health.  I told [O]fficer Kloc and [O]fficer N. Wright I was at Regional Mental Health for an assessment and was not suicidal and didn't want to harm myself.  Officer N. Wright proceeded to open the Jeep door intr[u]ding onto my privacy and ordered me to stand outside the vehicle and put my hands behind my back.  Officer N. Wright then put handcuffs on my wrists seizing me then grabbed my clothing and escorted me into the inpatient facility without a warrant.

[DE 1 at 1.]  Caldwell further alleges that Wright later held Caldwell on a bed while medication was injected into his body without his consent and without any hearing to authorize forced medication.  [*Id*. at 4.]  Caldwell appears to acknowledge that his father "signed" consent for his treatment.  [*Id*.]  Caldwell remained in the Center overnight and was discharged the next day.  [*Id*. at 5.]  The complaint identifies the claims as made under the 4th Amendment for an unreasonable seizure of Caldwell's person, and under the 14th Amendment for a violation of due process.  [*Id*. at 4, 5.]

Defendant Wright has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which is now fully briefed and ripe for ruling.  The Supreme Court interpreted the Rule 12(b)(6) pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To survive a motion to dismiss under that standard, a complaint must "state a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S, 570, 556.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

2

short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

The complaint twice identifies Caldwell's claim against Wright as being in his "official capacity." [DE 1 at 3, 4.] In the context of claims brought under §1983, suing a government official in his official capacity means that "in all respects other than name" the lawsuit is treated as a suit against the government entity the official serves. *Bridges v. Dart*, 950 F.3d 476, 478 n.1 (7th Cir. 2020), citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity...itself caused the constitutional violation at issue." *Bridges*, 950 F.3d at 479. This requires a government custom, policy or practice that has inflicted the injury and can be said to represent the official action of the government entity itself. *Id*.

The complaint contains no allegation of an official policy of the Merrillville Police Department that is responsible for Caldwell's allegedly unconstitutional treatment, nor of any established custom or practice of the MPD that governed or directed Wright's challenged behavior. Caldwell has not articulated a viable official capacity claim under §1983 based on the allegations of the complaint. To that extent, Wright's motion to

3

dismiss will be granted, and Caldwell's claim against Wright in his official capacity will be dismissed without prejudice.

As a *pro se* litigant without the benefit or training of an attorney, it seems likely that Caldwell does not fully understand the distinction between suing Wright in his official and individual capacities. This opinion has generally explained what is required of an "official capacity" claim and what its ramifications are. In the §1983 context, a plaintiff representing himself may confuse the requirement of a defendant "acting under color of state law" with the separate concept of a claim against the defendant "in his official capacity." A claim against a government agent in his "individual capacity" must be based on personal liability for having caused, participated in, or acquiesced in a constitutional deprivation. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011); *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010). Caldwell's allegations against Wright are clearly in this vein.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). In any event, "courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds...especially when he is litigating *pro se*." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012), citing *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010), and *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 551 (5th Cir. 2003). The allegations of Caldwell's complaint appear

4

better suited as an attempt to plead a claim against Wright in his individual capacity, and I will construe the complaint as doing so.

Wright's motion to dismiss is less successful when it attempts to dispose of any claim Caldwell brings against Wright in his individual capacity. For that purpose, Wright invokes the legal doctrines of quasi-judicial immunity and qualified immunity. [DE 13 at 5.] In support of these arguments, Wright's motion contends that his actions on January 30 were taken for the purpose of executing an "Emergency Detention Order" requiring involuntary treatment of Caldwell. [DE 13 at 6.] What Wright refers to as an "Emergency Detention Order" (Exhibit C to his motion) is actually a "Physician's Emergency Statement" signed by Dr. Tahira Jabeen on January 30, 2020 at 12:45 p.m. [DE 13-3.] Wright's motion references an Indiana statute authorizing involuntary commitment of an individual who is mentally ill, dangerous, and in need of immediate restraint. I.C. §12-26-5-1. That statute requires not only a qualifying physician statement (under subsection (b)(2)), but also an application (under subsection (b)(1)) in which the applicant states a belief that the individual meets the statutory requirements of mental illness, dangerousness and need for immediate restraint. No such application has been made part of the record.

Wright claims, but without evidentiary support, that Caldwell's father requested an Emergency Detention Order. [DE 15 at 1-2, 5, 6.] Exhibit B to Wright's motion is the August 3, 2016 order appointing Caldwell's father, Rodney Caldwell, as the "Guardian of Chase Caldwell's personal and financial affairs." [DE 13-2 at 1.] This order

5

establishes nothing about what, if any, action was taken by Rodney Caldwell with respect to Chase Caldwell's treatment at Regional Mental Health Center on January 30, 2020, and is not a substitute for an application for Emergency Detention under I.C. §12-26-5-1(b)(1).

Nor has Wright provided any document bearing a judge's endorsement or entitled an "order" of any court authorizing Caldwell's involuntary transport for treatment on January 30. The language of §12-26-5-1 does not expressly require a judicial order, but the next section provides that "[i]f a judicial officer authorized to issue a warrant for arrest in the county in which the individual is present endorses an application made under section 1 of this chapter, the application authorizes a police officer to take the individual into custody and transport the individual to a facility." I.C. §12-26-5-2(a). Wright has not shown the endorsement of a judge that would authorize Wright's seizure of Caldwell. Further suggesting the necessary involvement of a court in the Emergency Detention process, §12-26-5-5 requires "a written report to the court" by the superintendent of the facility or the attending physician "[b]efore the end of a detention period under this chapter."

Wright also relies on an order of Porter County Superior Court Judge David Chidester. [DE 13-1.] But this is an order dated months before on October 23, 2019, which released Caldwell on pretrial supervision, not ordered him subjected to any involuntary medical treatment. Judge Chidester's order imposes as a condition of release that Caldwell report to Porter Starke Services, "begin/resume treatment" and

6

take prescribed medications.  [*Id*. at 2.]  But this language does not authorize the seizure of Caldwell for any purpose, and certainly not for involuntary medication at Merrillville's Regional Mental Health Center.

In summary, the "Physician's Emergency Statement" is clearly not an "Emergency Detention Order," and no judicial authorization has been shown to support police seizing Caldwell on January 30 and subjecting him to forced medication.  Even if the statutory scheme does not require judicial action in every instance, an Emergency Detention under Indiana law requires at a minimum a proper application in addition to a physician's statement, and no application appears in the record to demonstrate that those requirements were met.  Wright's contention that his conduct was an authorized execution of a judicial order lacks factual support as well as adequate legal analysis.  In any event, the argument, with its reliance on evidence beyond the pleadings, is not properly made in support of a motion to dismiss, and I decline to convert the motion to one for summary judgment at this juncture, when discovery has not yet begun.

**ACCORDINGLY:**

Defendant N. Wright's motion to dismiss [DE 12] is GRANTED IN PART with respect to the complaint's claims against defendant N. Wright in his official capacity, which are DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.  The complaint is construed as also asserting claims against N.

7

Wright in his individual capacity, as to which the motion to dismiss is DENIED IN PART.

**SO ORDERED**.

ENTERED: October 29, 2020.

                                                     /s/ Philip P. Simon
                                             **UNITED STATES DISTRICT JUDGE**